## 65572. PERCY WILSON MORTGAGE & FINANCE CORPORATION v. SIZEMORE.

CARLEY, Judge.

Appellant-plaintiff was the holder of a perfected purchase money security interest in a mobile home. The purchaser subsequently rented a lot in a mobile home park from the appellee-defendant and had the mobile home located thereon. Apparently sometime in 1980, the purchaser defaulted on his note to appellant. The purchaser also failed to pay property taxes in the approximate amount of $188.00 to the Consolidated Government of Columbus. In May of 1980, the purchaser abandoned the mobile home. In June of 1980, delinquent tax notices were placed on the mobile home, said notices stating that the mobile home would be sold by the tax commissioner at the Muscogee County Courthouse on July 7, 1980, at 11:00 a.m. Appellee gained personal knowledge of the impending sale and decided to attend. Appellant, who had initiated certain collection procedures regarding the debt underlying the purchase of the trailer, discovered as early as June 19, 1980, that delinquent property taxes were owed and that the mobile home had been levied on. An agent of appellant contacted the Tax Commissioner's Office and received official confirmation of the delinquent taxes and the date of the levy. It is unclear what, if any, information was given appellant concerning the date of the tax sale. According to appellant, the Tax Commissioner had stated in a

telephone conversation that "it would be one month before the trailer would be sold to satisfy the tax debt." A letter to appellant from the Tax Commissioner did not specify the date of the sale. What is clear, however, is that appellant made no effort to satisfy the delinquent taxes. Instead, appellant made arrangements to repossess the mobile home and contracted to have it physically removed from appellee's lot.

The tax sale was conducted on July 7, 1980, by the Marshal's Office of the Municipal Court of Columbus. The Tax Commissioner's bid was $188.00, which was the amount of the delinquent taxes. Appellee's bid was the sum of $200.00. No higher bids were received and the mobile home was sold to appellee. Based upon the bill of sale from the Marshal's Office, appellee then applied for and received a Georgia certificate of title to the mobile home, said title reflecting no lien or security holder.

Approximately a year subsequent to the tax sale, appellant instituted the instant action in three counts seeking damages against numerous named defendants, including, in addition to appellee, the following: The Consolidated Government of Columbus; the Tax Commissioner; the Marshal of the Municipal Court; and John Doe, an unidentified government employee who had allegedly represented to appellant that it had "plenty of time" to protect its interest in the mobile home and that the tax sale "would not take place, under the law, for at least one month." Count I sought damages in the amount of the unpaid mortgage balance on the mobile home at the time of the sale and was premised upon the allegation that the tax sale was "null and void" because it did not comply with the requirements of OCGA § 48-4-1 et seq. (Code Ann. § 91A-401 et seq.). Count II alleged a conspiracy to defraud appellant and to cause appellee to acquire title to the mobile home for the "grossly inadequate sum of $200.00." Count III alleged that appellee had failed to communicate the date of the tax sale to appellant, "even though [appellee] had opportunity to do so."

Appellee subsequently moved for and was granted summary judgment as to all three counts. It is from this order that appellant brings the instant appeal.

1. It is "sufficient for the purchaser [at a sheriff's sale] that *the sheriff had obtained authority to sell and had executed to him a title.* The provisions of law governing the advertisement of the property for a particular time or in a particular way are merely directory to the sheriff, and any such neglect on his part may subject him to a suit for damages at the instance of the party injured, but does not affect the title of the purchaser unless there was actual fault on the purchaser's part, such as collusion between him and the sheriff. [Cits.] *Even the*

*fact that the purchaser was put upon notice that such a merely directory duty of the officer had not been complied with would not, in the absence of fraud or collusion on the part of the purchaser, render the sale void and thus impair the title so acquired.* [Cit.]" (Emphasis supplied.) *Marshall v. Armour Fertilizer Works,* 24 Ga. App. 402 (2) (100 SE 766) (1919). We note at the outset that, as against appellee's evidence offered in support of his motion, there is nothing in the record which would authorize a finding that appellee conspired or colluded with any official involved in the sale of the trailer so as to defraud appellant. Accordingly, it was not error to grant appellee summary judgment as to Count II of appellant's complaint.

2. We turn to the issue of Count I, which was predicated upon the "void" tax sale. We reiterate that appellant seeks only a monetary recovery from appellee based upon the alleged improper tax sale and not an adjudication setting aside either the sale itself or appellee's title to the mobile home. Accordingly, we construe Count I as being in the nature of a trover action. See generally *Henry v. Cowan,* 88 Ga. App. 503 (76 SE2d 839) (1953); *Smith v. Hanna Mfg. Co.,* 68 Ga. App. 475 (23 SE2d 552) (1952).

In a rather convoluted argument, appellant first seeks to demonstrate the "wrongfulness" of the sale by asserting that the Marshal of the Municipal Court had no authority to conduct a tax sale. Thus, according to appellant, appellee has not received valid title to the mobile home from one who "obtained authority to sell" (*Marshall v. Armour Fertilizer Works,* supra) and this fact subjects appellee to a trover action.

OCGA § 48-4-3 (Code Ann. § 91A-403) provides in relevant part: "The tax collector or tax commissioner may place his executions in the hands of *any constable of the county, who shall be authorized to collect or levy the executions in any part of the county.* The constable or other levying officer to whom the tax collector or tax commissioner delivers the tax executions for collection shall proceed promptly to enforce by levy and sale the collection of the executions." (Emphasis supplied.) Section 16 of the act creating the Municipal Court of Columbus provides in pertinent part: "[A]ll the requirements and duties, powers and authority imposed by law, and conferred . . . upon the sheriff and his deputies of Muscogee County, *shall be obligatory upon and shall be vested in the . . . marshal and deputy marshal or marshals of said court . . .* so far as said duties may be applicable to said court, and except where inconsistent with or limited by the provisions of this Act defining the jurisdiction of said court. . . ." (Emphasis supplied.) Ga. L. 1952, pp. 2184, 2192. It is clear that the Sheriff of Muscogee County would have authority to enforce by levy and sale the collection of the tax commissioner's fi. fas. Under the

aforecited statute, the Marshal of the Municipal Court of Columbus would likewise have that authority. See *Jackson v. Blackwell,* 173 Ga. 614, 618(6) (160 SE 772) (1931). Compare *State of Ga. v. Paschal,* 27 Ga. App. 357 (108 SE 475) (1921). Accordingly, we find that the Marshal had authority to conduct the tax sale.

Appellant also asserts that the issue of whether the levy on the trailer to satisfy a tax bill of $188.00 was excessive remains unresolved and, on this ground, urges that it was error to grant appellee summary judgment as to Count I. See *Henry v. Cowan,* supra. The mere fact that property which was sold for taxes did not bring its value will not raise a legal presumption that the sale was void. *Shackleford v. Hooper,* 65 Ga. 366 (1880). "The value of property sold for taxes in a large majority of cases, must of necessity far exceed the amount of the fi. fa., or even the amount for which the same is sold. There are but few instances where such property at these sales brings more than the taxes due and the accompanying costs, so that to hold that the law presumes all such sales null and void, would be extending the principle beyond the limits of the law, and this we cannot do." *Shackleford v. Hooper,* supra at 368-369. The evidence of record in the instant case admits of no construction but that levying on an abandoned mobile home for delinquent taxes owed on it by a taxpayer who is apparently beyond the territorial limits of the state was not an excessive levy. The mere fact that the value of the property levied on " 'may be considerably more than the amount of the execution will not necessarily show that the levy is excessive. The property must be such as to be reasonably capable of subdivision and sale, so as to realize the amount of the execution . . .' [Cits.]" *Crump v. McEntire,* 190 Ga. 684(5) (10 SE2d 186) (1940). No contention is made that a mobile home, presumably the only leviable property of a delinquent taxpayer, is "reasonably capable of subdivision and sale." Compare *Walker v. Maxwell,* 203 Ga. 393, 394(3) (46 SE2d 923) (1948); *Henry v. Cowan,* 88 Ga. App. 503, supra. Indeed, appellant seemingly relies solely upon the unwarranted presumption that the excessiveness of the levy is shown merely by a comparison of the value of the property sold with the amount of the execution. *Shackleford v. Hooper,* supra; *Crump v. McEntire,* supra. No genuine issue of material fact remains on the record before us as to the purported excessiveness of the levy on the mobile home.

There is no basis for holding the underlying tax sale void for reasons of the Marshal's lack of authority or the excessiveness of the levy. With overall regard to Count I, which is ultimately an attack upon the validity of appellee's title to the motor home acquired at the tax sale, it is clear that if any breach of a duty occurred regarding that sale, it was a merely directory duty owed by the officials who

instituted and executed that sale, and not one owed by appellee. *Marshall v. Armour Fertilizer Works,* supra. Those officials who conducted the sale remain as defendants in the case and, if appellant can prove the breach of any duty owed to it regarding notice or advertisement of the sale, a recovery of damages would be authorized. Appellee was, however, an innocent purchaser at the sale and was not erroneously granted summary judgment as to this count of appellant's complaint.

3. Appellant also asserts that genuine issues of material fact remain with reference to Count III, allegations of which, as noted above, were that appellee defrauded appellant by failing to communicate the date of the tax sale "even though he had an opportunity to do so." (R-82). Appellee's evidence effectively pierced any allegations that he was a party to a conspiracy to defraud or had engaged in any individual effort to defraud appellant regarding the tax sale. The duty, if any, to give notice to appellant of the impending tax sale was on the officials under whose authority it was being conducted. The evidence of record negates the existence of a confidential relationship between appellee and appellant or of circumstances giving rise to an independent duty on the part of the former to give the latter notice of the date of the sale. See generally *Littlejohn v. Drennon,* 95 Ga. 743 (22 SE 657) (1895). It was not error to grant appellee summary judgment as to Count III.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED JUNE 29, 1983.

*Peter G. Williams,* for appellant.
*Jacob Beil, Samuel W. Oates, Jr., Roscoe Thompson, J. Walter Owens, Jr.,* for appellee.